THE GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
MRS. S. E. COMPTON.

No. 2705.

1. **Res Gestæ—Conversations.**—Suit by mother against a railway company for
negligently causing her son's death. The son was fireman on a train of water cars,
which collided with a passenger train north of Hitchcock and south of Alvin, on the
appellant's railway. The appellant offered a witness to prove that at Duke, a station
north of Alvin on said road, he had heard a conversation between the operator and a
man who got off the water train, and who was either engineer or fireman, in which the
operator informed the party from the water train that he would meet the passenger
train at Alvin. *Held*, that the conversation was competent, and that it was error to
exclude it.

2. **Custom Among Railways—Negligence.**—A custom among railway compa-
nies as to the crew put in charge of a train, while competent as evidence, it seems to
be error to charge the jury so that they may believe a departure from such custom is
negligence. Whether negligence exists should be determined by the jury upon the
facts found also by them.

3. **Opinions—Hypotheses.**—The opinion of an expert upon a hypothetical case
will be excluded unless there be evidence tending to prove the supposed facts. It is
not necessary that a hypothetical case embrace every fact proved, or which there is evi-
dence tending to prove.

4. **Damages for Death of Son.**—A mother being the only person living entitled
to damages, sued a railway company for damages for negligently causing her son's
death. She can join in the suit damages as well for loss of labor during minority as
for the remedy provided by statute.

5. **Expectancy of Life.**—Evidence of the probable duration of life by experts in
the business of life insurance is admissible in suits for negligently causing the death of
a son, etc., but it is not necessary. Our law contemplates that the jury shall judge of
this upon proof being made of the party's age and physical condition.

6. **Exemplary Damages.**—See facts where it was proper for the court to instruct
the jury that they could not give exemplary damages.

7. **Testimony—Repairs After Injury.**—It is not competent, in an issue of negli-
gence, to prove that subsequent to an injury the railway company supplied the want
complained of, as evidencing want of care.

APPEAL from Wharton. Tried below before Hon. Wm. H. Burkhart.

This is an appeal from a judgment in the District Court for $6000 in
favor of appellee for damages against appellant for negligently causing
the death of her minor son. The facts are sufficiently stated in the
opinion.

*J. W. Terry*, for appellant. — 1. The court erred in its charge in
making the appellant's liability depend on the existence of a custom upon
other railroads requiring the presence of a conductor on a water train.

When charged with the commission of a negligent act, a railroad com-
pany can not excuse itself by showing that it was in accordance with the
custom prevailing on all other railroads; and it is submitted that the
converse of the proposition is true, and that a railway company is not, as
a matter of law, chargeable with negligence for failure to observe the

customs of other railroads. The charge complained of practically withdrew the question of negligence from the jury and made the defendant's liability upon the issue of negligence depend upon the custom of other railroads. The charge is also objectionable for the reason that it gave undue prominence to the customs of other railroads. Railway v. Evansich, 61 Texas, 3; Railway v. Simpson, 60 Texas, 103; 1 Thomp. on Neg., p. 345, sec. 7, and p. 574, sec. 17; Temperance Hall Association v. Giles, 33 N. J. Law, 260.

2. There being no statute of the State prescribing the number of employes who should go upon a train, it was a question for the jury, under all the facts and circumstances, whether the defendant was negligent in sending the train without a conductor. While the usages and customs of other railroads were admissible in evidence upon the issue of negligence, yet it was error in the court, as it did in the charge complained of, to make the question of negligence depend on the observance or nonobservance by appellant of such customs and usages of other railroads, thereby giving to such customs and usages the force and effect of statutes. Railway v. Williams, 72 Texas, 159; Railway v. Medaris, 64 Texas, 92; Railway v. Simpson, 60 Texas, 106; Railway v. Waller, 56 Texas, 331; Railway v. Richards, 59 Texas, 376; Railway v. Levy, 59 Texas, 687; Whart. on Neg., sec. 420; 2 Am. and Eng. Ry. Cases, 114; Droes v. Railway, 59 Mo., 27; Railway v. Gray, 65 Texas, 35.

3. To make the opinion of an expert admissible, it should be based upon the facts of the particular case.

4. In a suit by a parent to recover damages under the statute for the death of a minor child, the measure of damages is the value of the services of the minor until the period of majority, less the cost of support of the minor during such time. Railway v. Morin, 66 Texas, 135; Railway v. Feebe, 33 Pa. St., 318; Caldwell v. Brown, 53 Pa. St., 453; Lehigh Iron Works v. Ruff, 7 Am. and Eng. Ry. Cases, 25; Rains v. Railway, 71 Mo., 610; The State v. Railway, 24 Md., 84, 105; Railway v. Tindall, 13 Ind., 366; Railway v. Lilly, 73 Ind., 252; Railway v. Freeman, 4 Am. and Eng. Ry. Cases, 608; Telfer v. Railway, 30 N. J. Law, 209–211; Railway v. Delany, 82 Ill., 198; 2 Thomp. on Neg., 1292; Shearm. & Redf. on Neg., sec. 608.

5. It is the duty of a plaintiff seeking to recover damages under the statute beyond the period of majority, for the death of a child for such an amount as plaintiff would probably have received from the child had it lived, to furnish the jury with all reasonable evidence and data to guide them in estimating such amount. One of the elements necessary for an intelligent assessment of the damages is proof of the expectancy of life of the plaintiff, as the length of time which she would live would necessarily control the amount that she would have received from her

son had he lived. Railway v. Stewart, 71 Ga., 427; Railway v. Brinson, 64 Ga., 479; Railway v. Thomas, 68 Ga., 744; Railway v. Neely, 56 Ga., 543.

*Brady & Ring* and *Parker & Pearson,* for appellee.—1. Customary manner. Railway v. Medaris, 64 Texas, 92.

Risks ordinarily incident to business. Wood on Mast. and Serv., sec. 326.

Hazards not usually incident to business. 3 Wood on Mast. and Serv., sec. 380.

Must establish rules. 3 Wood on Mast. and Serv., secs. 381, 382; Regan v. Railway, 6 S. W. Rep., 371; Cook v. Railway, 24 N. W. Rep., 311.

Necessity for special charge. Railway v. Hardy, 61 Texas, 230; Railway v. Casey, 52 Texas, 112; 44 Texas, 544.

2. Limiting the right of recovery to minority. Rev. Stats., arts. 2899, 2909; Railway v. Nixon, 52 Texas, 25; Railway v. Cowser, 57 Texas, 301; Potter v. Railway, 21 Wis., 377; 3 Suth. on Dam., 283; 42 Cal., 212.

Right not limited to legal claim. Railway v. Barron, 5 Wall., 105.

Necessity of introducing in evidence mortality tables. Railway v. Kindred, 57 Texas, 503; Railway v. Putman, 118 U. S., 545; Etherington v. Railway, 4 Am. and Eng. Ry. Cases, 617.

Verdict not excessive. Railway v. Kindred, 57 Texas, 503; Railway v. Cowser, 57 Texas, 294; 42 Cal., 216; 3 Suth. on Dam., 282; Ihl v. Railway, 47 N. Y., 321; O'Mara v. Railway, 38 N. Y., 445; Oldfield v. Railway, 14 N. Y., 310; Etherington v. Railway, 4 Am. and Eng. Ry. Cases, 618.

Youth and inexperience. Railway v. Watts, 63 Texas, 552; Railway v. Carlton, 60 Texas, 401; Parkhurst v. Johnson, 15 N. W. Rep., 107; Cooms v. New Bedford Cordage Co., 102 Mass., 585.

3. The court erred in charging the jury as follows: "You are charged that you can find no exemplary damages in this case;" and also in failing to give the second special charge requested by plaintiff, the same embracing the issue of exemplary damages. Rev. Stats., art. 2899; Railway v. Cowser, 57 Texas, 305; Hays v. Railway, 46 Texas, 284; Railway v. Demilley, 60 Texas, 197; Railway v. Hamilton, 66 Texas, 95; Telegraph Co. v. Brown, 58 Texas, 175; Garrett v. Railway, 3 Am. and Eng. Ry. Cases, 421; Railway v. Ames, 1 Otto, 492.

Gross negligence defined. Railway v. Derby, 14 How., 486; Railway v. Horst, 93 U. S., 296.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for injuries resulting in the death of Alexander Compton, her minor son. His death was alleged to have been caused by the negligence of the defendant company.

The son was eighteen years old at the time of the accident, and had, with the consent of plaintiff, been employed by defendant in its shops as

a "wiper," whose duty it was to clean engines.   On the afternoon of the day of his death he was sent out on a water train as fireman.   The train left Galveston about 4 o'clock p. m., and ran to Duke, a station forty-four miles north of the city.   Upon the return trip, at about 9:30 o'clock at night of the same day, it collided with a passenger train running north.

The plaintiff's son was killed by the collision.   The accident occurred south of the station known as Alvin, and north of that known as Hitchcock.   The train consisted of eleven water cars and an engine. and was operated on the trip by an engineer named Hitchcock, Alexander Compton, who acted as fireman, and one brakeman.   The plaintiff adduced testimony tending strongly to show that it was a general custom among railroad companies to man such trains with a conductor, an engineer, a fireman, and at least one brakeman, and that it was not regarded as prudent to run such a train without such employes.

The facts were very fully alleged in the petition, and the negligence of the company in failing to send out a conductor in control of the train was charged to be the proximate cause of the injury.   The defendant pleaded a general denial, and specially answered that the accident was caused by the negligence of Hitchcock, the engineer, who was the fellow servant of Alexander Compton, the deceased, and that therefore the plaintiff could not recover.

During the progress of the trial defendant's counsel offered to prove by a witness the following facts:

"That he, the witness, was present at Duke station in the afternoon of the night of the 18th of November, just before the water train, which afterward collided with the passenger train, left Duke for Galveston, and that he heard the following conversation between the operator at Duke and a man who got off the engine of the water train, who was either the engineer or fireman.   The operator told the man he ought to meet the passenger train at Alvin.   The man then said to the operator, 'I am hungry; can't we make Hitchcock?' a station south of Alvin and south of Halls; to which the operator said 'No.'  The man then got on the engine and the train departed in the direction of Galveston.   When the witness was asked how he knew that this man was the engineer or fireman, he stated that he did not remember the appearance of the man well enough to describe him; he looked like he had been working on the engine; he got off the engine, had the conversation with the telegraph operator, then got back on the engine, and went off with the engine."

The plaintiff objected to the testimony on the grounds (1) "that it was hearsay," and (2) "that the witness did not identify the man as the engineer."   The evidence was excluded.   We are of opinion that this was error.   The testimony tended to prove that an order was given to the person in charge of the train to stop at Alvin and to await the passage of the north bound passenger train, and that his desire was to hasten for-

ward and to meet the latter train at Hitchcock.   Therefore its tendency was to show that the accident was the result of the negligence of the engineer.   The conversation was a part of the transaction, and was as such admissible.   Railway v. Collier, 62 Texas, 318.   It was therefore not hearsay, as is claimed in the first ground of objection.

The second ground of objection was not more tenable.   The witness, it is true, did not know the engineer, and could not describe him; but the facts that there were but two persons on the engine, that the man in question left the engine apparently for instructions, and immediately resumed his place upon it, and that the engineer was the proper person to receive the orders, together with the conversation itself, were circumstances which, taken together, tended very strongly to show that he was the engineer.   If the engineer believed that he could reach Hitchcock before meeting the passenger train, and if he attempted to accomplish this contrary to his instructions, and thereby caused the collision, then the accident was not the result of the failure to provide the train with a sufficient number of men to operate it safely in every emergency, but was proximately caused by the engineer's own negligence.   It is insisted on behalf of appellee that if the company was negligent in sending out the train without a conductor, and the collision would not have occurred if the conductor had been sent, it is liable for the injury, notwithstanding the engineer may have been negligent.   But we are not of that opinion. We think that if the accident would not have happened but for the negligence of Hitchcock, his want of care was the proximate cause of the injury, and that the result can not be imputed to the negligence of the defendant in failing to provide a conductor for the train.   For this reason we think the testimony which was excluded was relevant and material, and being legal, that its exclusion is error, for which the judgment must be reversed.

Since the judgment is to be reversed, we consider it unnecessary to discuss at length the correctness of that part of the charge of the court which is complained of in appellant's third assignment.   We think the charge is objectionable, because it gives too much prominence to the alleged custom of other railroad companies to send out trains equipped with a conductor, in addition to the engineer and brakeman.   We are of opinion that the mere fact that railroad companies generally adopted such a custom would not make it negligent in the defendant company to fail to observe it, provided its method of operating its trains was in point of fact reasonably safe.   The paragraph of the instructions in which the law is applied to the facts of the case is as follows:

"If you believe from the evidence that an established rule, custom, or usage prevailing in the railway service in Texas on properly regulated railroads was violated in the sending out of the said water train in charge of the engineer Hitchcock, unaccompanied by a conductor, and that the ob-

servance of such custom or usage so violated was reasonably necessary for the reasonable safety of the defendant's employes and the public generally, and that such usage was violated with the knowledge or with the consent or acquiesence of defendant's general managing officers, or that they failed to use reasonable diligence in enforcing the observance of the same, and were thereby guilty of negligence, and that such negligence on their part was a direct or proximate cause of said collision, and that Alexander Compton, deceased, when he went out with said Hitchcock on the occasion on which he was killed did not know the existence of such rule, custom, or usage, or if he did know of the same he did not know of the danger resulting from violation of the same, and that under the circumstances he could not reasonably have been expected to have had such knowledge, you will find for the plaintiff; otherwise you will find for the defendant."

We are not prepared to say that this involves any legal proposition that is not sound. But taken in connection with the previous portions of the charge, we think the jury may have concluded that if the custom of other railroad companies was proved, it was negligent in the defendant company not to observe it, without reference to the fact whether the presence of a conductor upon the train in question was reasonably necessary to its safety or not. Without deciding whether or not the judgment should be reversed on account of the charge, we deem it sufficient to intimate its defect in order that it may be remedied upon another trial.

In course of the trial the court admitted over the defendant's objection the answer of certain witnesses shown to be experts to the following hypothetical question:

"It is claimed in the case at bar that an ordinary water train, consisting of eight or twelve cars, was sent from a certain city in Southern Texas to a point some forty miles thereabouts distant therefrom for the purpose of getting at said point a load of water from an ordinary water tank and then return to said city with the water on the same day; that said train on said trip left said city about 4 or 4:30 in the afternoon of a certain day in the month of November; that the said forty miles of railroad track over which the train was sent between said city and the point to which the above train was going for the water was then being used by four daily passenger trains and the same number of regular daily freight trains, while about twenty-eight miles of the same track was then being used by two more daily passenger trains, it being a single track and in first class condition. Please state the number of employes which, in accordance with ordinary rules, customs, or usages of the railway service would accompany said water train on said trip, and state the names of the positions that each of such employes respectively would hold on such trains, and the duty which each would perform in connection therewith."

The answer admitted was as follows:

"Such a special train would ordinarily be accompanied by an engineer, fireman, conductor, and two brakemen. The engineer would attend to his engine, the fireman would assist the engineer, and the conductor have full control of the employes of the train—would look out for the running of the train, and would see that it kept out of the way of all trains, and would run according to orders from the dispatcher's office. One brakeman would be at the rear end of the train, and the other at the head end."

The evidence was objected to on the ground that the hypothetical case upon which the opinion of the witnesses was asked was not the precise case shown by the evidence. There was evidence to show that during the hours required for the water train to make the trip from Galveston to Duke and to return there were but two regular trains assigned to run on that part of the road—one going north and the other south—although during the twenty-four hours eight trains did run as stated in the question. Concerning this matter there was no conflict in the evidence.

It is therefore insisted that the question should have been whether or not it would have been safe to operate a train such as is described in the question over a road, when during the time of its trip it would meet but two trains. We understand the rule to be that the opinion of an expert upon a hypothetical case will be excluded, unless there be evidence tending to prove the supposed facts; but we have found no authority which holds that a hypothical case must embrace every fact proved, or which there is evidence tending to prove. In Feler v. Railway, 49 New York, 42, it is said: "Some latitude must necessarily be given in the examination of medical experts and in propounding hypothetical questions for their opinions, the better to enable the jury to pass upon the questions submitted to them. The opinion is the opinion of the expert, and if the facts are found by the jury as the counsel by his question assumes them to be, the opinion may have some weight, otherwise not. It is the privilege of counsel in such cases to assume within the limits of the evidence any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed." The facts assumed in the question before us were established by the evidence in the case. If counsel for defendant desired the opinion of the witnesses as to the safety of operating a train between the hours when only two other trains were to be encountered, he could upon cross-examination have asked his opinion based upon that state of facts. We think there was no error in admitting the testimony.

The court did not err in refusing the following instruction asked by appellant: "You are instructed that the measure of damages in this case is the value of the services of Alexander Compton from the day of his death to the time he would have attained the age of twenty-one years, less the cost of his maintenance and support during that period."

The appellee being the sole surviving parent of Alexander Compton, was entitled to his services during minority, and hence at common law could have recovered their value during that period, in the event the appellant was found liable for the injury. But it does not follow that this right abridges in any manner her claim for the compensation given by the statute. Rev. Stats., arts. 2899, *et seq.* It happens in this particular case that the plaintiff being the sole surviving parent of the deceased, is entitled to recover, if at all, damages not only for the loss of services during her son's nonage, but also for the loss of any prospective pecuniary benefits which she may have received from him after he attained his majority. She has sued for the whole in the statutory action, as we think she had the right to do; and her right to recover in such action can not be restricted to the period of her son's minority.

Neither did the court err in refusing to charge the jury that by reason of the plaintiff's failure to prove her expectancy of life she could recover damages only for the loss of her son's services during his minority. Evidence of the probable duration of life by experts in the business of life insurance is admissible in such cases, but is not necessary. Our statute contemplates that the jury shall judge of this upon proof being made of the party's age and physical condition. It was, in effect, so held in two cases decided by this court at the last Tyler Term.

The questions presented by the other assignments of appellant are not likely to arise upon another trial, and need not be considered.

The appellee presents the following cross-assignment of error:

"The court erred in charging the jury as follows: 'You are charged that you can find no exemplary damages in this case;' and also in failing to give the second special charge requested by plaintiff, the same embracing the issue of exemplary damages."

We are of opinion that the court did not err in giving the instruction quoted in the assignment or in refusing that requested by appellee. The plaintiff does not allege in her petition the value of her son's services during his minority, and hence her suit must be considered as brought wholly under the statute.

In Winnt v. Railroad Company, 74 Texas, 32, it was held that in such a case the mother can not recover exemplary damages. Besides this, it appears from the evidence that no collision had occurred upon defendant's road for many years, and it is alleged in the petition that the defendant had run the water train in question without a conductor for the space of twelve months. It was shown that the road from Galveston Bay to Duke was straight and level, and that there were but two regular trains to be passed in making the trip. If the train had run regularly for twelve months without a conductor and without accident, it was not gross negligence on the occasion in question to send it out in the same manner. The evidence did not warrant a recovery of exemplary damages,

even if the statute had given such damages to the parent in such a case.

During the trial appellee offered to prove by a witness that ever since the accident defendant's water trains had been accompanied by a conductor. The testimony, upon objections being made by defendant, was excluded by the court. The court did not err in its ruling. This court has held that in a suit for damages claimed to result from the negligence of a railroad company it is not competent for the plaintiff to show that after the accident the company have taken additional measures to prevent a recurrence of the casualty. G. C. & S. F. Ry. Co. v. McGowan, 73 Texas, 355, and cases cited.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 28, 1890.